UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD ALLEN REEVES, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. H-05-1233 |
| | § | |
| DOUG DRETKE, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

State inmate Richard Allen Reeves petitions for a federal writ of habeas corpus to challenge the result of a prison disciplinary conviction. The respondent moves for summary judgment, arguing that Reeves is not entitled to federal habeas corpus relief. (Docket Entry No. 13). Reeves has filed a reply. (Docket Entry No. 17). After considering all of the pleadings, the disciplinary hearing records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons set forth below.

**I. BACKGROUND**

Reeves is currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ") as the result of felony convictions for unauthorized use of a motor vehicle, burglary of a vehicle, theft, and credit card abuse. (Docket Entry No. 13, Exhibit A, *Commitment Inquiry* ). Reeves does not challenge any of his underlying convictions here. Instead, he contests the result of a prison disciplinary proceeding lodged against him at the Ellis Unit in Huntsville, Texas,

where he remains in custody.

In December of 2004, Officer C. Crippen issued charges against Reeves in disciplinary case #20050110905, accusing Reeves of possessing an unauthorized drug, namely, three grams of "heroine/morphine," and drug paraphernalia in violation of prison rules. (Docket Entry No. 6, *Disciplinary Hearing Report*, at 1). The record reflects that, shortly thereafter, Reeves was charged in a separate disciplinary case not challenged here, in case #20050110907, with testing positive for drug usage. (Docket Entry No. 2, *Exhibits*, Step 1 Grievance #2005075693, Step 2 Grievance #2005071182).

Reeves was found guilty following a hearing in case #20050110905 on December 22, 2004. As punishment, Reeves lost his commissary privileges for 45 days, he was restricted to his cell for 45 days, and reduced in class status from S2 to L2. More significantly, the disciplinary captain revoked 1,095 days of previously earned credit for good conduct (*i.e.*, "good-time" credit). Reeves filed a series of grievances to challenge the disciplinary conviction, but his appeals were unsuccessful.

Reeves seeks federal habeas corpus relief from his disciplinary conviction in case #20050110905, arguing that he was denied due process during his proceeding. In particular, Reeves argues that his conviction should be set aside for the following reasons: (1) disciplinary officials failed to give him advance notice of certain evidence; (2) he was denied effective assistance of counsel; (3) he was denied his right to appeal; and (4) he was denied the right to present a witness. (Docket Entry No. 1, *Petition*). In the memorandum filed in support of his petition, Reeves argues further that he was

denied due process because the disciplinary hearing officer's guilty verdict was not based on sufficient evidence, the punishment imposed was overly harsh, and he has faced retaliation in connection with a "free world case."  (Docket Entry No. 2, *Memorandum* ).  The respondent moves for summary judgment on the grounds that Reeves is not entitled to federal habeas corpus relief on these claims.  The parties' contentions are addressed below in light of the applicable standard of review.

## II.    <u>STANDARD OF REVIEW</u>

The respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  In deciding a motion for summary judgment under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett* , 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.* , 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  A movant's burden is to point out the absence of evidence supporting the nonmovant's case.  *Malacara v. Garber* , 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex* , 477 U.S. at 323; *Stults v. Conoco, Inc* ., 76 F.3d 651, 656 (5th Cir. 1996)).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action.  *Id.* (citing *Celestine v. Petroleos de Venezuela SA* , 266 F.3d 343, 349 (5th Cir. 2001)).

An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The petitioner proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972); *see also Bledsue v. Johnson* , 188 F.3d 250, 255 (5th Cir. 1999) ("[I]n this circuit *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers."). Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines* , 404 U.S. at 521; *see also United States v. Pena* , 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.* , 84 F.3d 469, 473 & n.16 (5th Cir. 1996)). Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III.     EXHAUSTION AND PROCEDURAL DEFAULT

At the outset, the respondent notes that Reeves presented only one claim in the initial Step 1 and Step 2 Grievances that he filed to challenge his disciplinary conviction in this case.  The sole claim that he presented in this initial challenge was a general challenge to the sufficiency of the evidence showing that the drugs and drug paraphernalia were his. (Docket  Entry  No.  6, *Disciplinary Grievance Records* ).   Because Reeves failed to properly present the other claims that he attempts to raise on federal habeas review in his initial appeal, the respondent argues that these claims are procedurally barred by his failure to exhaust available administrative remedies in compliance with Texas law.

The pending petition is governed by the federal habeas corpus statutes found at 28 U.S.C. § 2254.  *See, e.g., Malchi v. Thaler* , 211 F.3d 953, 956 (5th Cir. 2000) ("State prisoners who allege that they were improperly denied good-conduct credit that, if restored, would have resulted in their immediate or sooner release from prison, fall under § 2254.") (citations omitted).  The federal habeas corpus statutes, codified as amended at 28 U.S.C. § 2254(b) and (c), provide that relief "shall not be granted" unless the applicant "has exhausted the remedies available in the courts of the State[.]"  Although decisions about prison grievances are made by TDCJ, and not by "courts of the State," there is no valid reason that the exhaustion requirement found in 28 U.S.C. § 2254(b) should not also apply where a prisoner is required to pursue the administrative grievance process.  *See Prieser v. Rodriguez* , 411 U.S. 475, 492 (1973) (pointing to the prison grievance process and noting that, because the "internal problems of state prisons involve

issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems"). In fact, the Fifth Circuit has long held that inmates seeking relief from prison disciplinary cases must exhaust their available administrative remedies before pursuing a federal writ of habeas corpus. *See Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978).

It is true that the very first Step 1 and Step 2 Grievances filed by Reeves challenged only the sufficiency of the evidence establishing possession. (Docket Entry No. 6, *Disciplinary Grievance Record*). However, Reeves presents exhibits which show that he did raise at least some of his remaining claims in other grievances that were filed subsequent to his initial challenge. (Docket Entry No. 2, *Exhibits*). According to these exhibits, it appears that the reviewing prison officials did not reject his allegations outright as procedurally barred, but rejected them only after considering the claims to be without merit. Because it appears that Reeves did exhaust his claims, the Court declines to apply the procedural bar in this instance. Nevertheless, for reasons discussed in more detail below, the Court concludes that Reeves fails to establish a valid claim for federal habeas corpus relief in connection with his prison disciplinary conviction.

## IV.   PRISON DISCIPLINARY PROCEEDINGS

The petitioner in this case seeks federal habeas corpus relief from a disciplinary conviction entered against him while in prison. The federal writ of habeas corpus is an extraordinary remedy which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§§ 2241(c)(3) & 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness"). Thus, to prevail on his request for federal habeas corpus relief the petitioner must establish a constitutional violation.

In the disciplinary hearing context a prisoner's rights, if any, are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, prisoners charged with institutional rules violations are entitled to rights under the Due Process Clause *only* when the disciplinary action may result in a sanction that will infringe upon a constitutionally protected liberty interest. *See Sandin v. Conner*, 515 U.S. 472 (1995). Liberty interests emanate from either the Due Process Clause itself or from state law. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). Liberty interests arising from state law are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted). Only those state-created substantive interests that "inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause. *Id*. at 487. *See also Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995), *cert. denied*, 516 U.S. 1059 (1996). The petitioner's claims are

addressed below to determine whether he demonstrates a due process violation.

### A.      Loss of Privileges, Cell Restriction, and Class Status

As a result of his disciplinary conviction, Reeves temporarily lost commissary privileges, he was restricted to his cell, and he was reduced in class status.  According to well-settled precedent, sanctions that are "merely changes in the conditions of [an inmate's] confinement" do not implicate due process concerns.  *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).  Limitations imposed upon commissary or recreational privileges, and a cell restriction or solitary confinement on a temporary basis, are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life.  *See Madison*, 104 F.3d at 768; *see also Sandin*, 515 U.S. at 486 (refusing to recognize a liberty interest in administrative segregation).  The Fifth Circuit has also decided that a reduction in a prisoner's class status and its potential impact on good-time credit earning ability are not protected by the Due Process Clause.  *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied*, 517 U.S. 1196 (1996).

Because lost privileges, a temporary cell restriction, and a reduction in class status do not implicate a constitutionally protected liberty interest, any challenge to these sanctions fails to state a claim that is cognizable on federal habeas corpus review.  Absent an allegation that the petitioner has been deprived of some right secured to him by the United States Constitution or laws of the United States, federal habeas corpus relief is not available.  *See Orellana*, 65 F.3d at 31; *Hilliard v. Board of Pardons and Paroles*, 759

F.2d 1190, 1192 (5th Cir. 1985).   The respondent is therefore entitled to summary judgment on the petitioner's claims concerning these sanctions.

### B.   Loss of Good-Time Credits

As a result of his disciplinary conviction, prison officials also revoked a total of 1,095 days of good-time credit previously earned by Reeves.   A challenge to the loss of good-time credits generally requires a separate analysis.   *See Madison*, 104 F.3d at 768.   There is no constitutional guarantee to assure credit for good conduct while in prison.   *See Wolff*, 418 U.S. at 557.   However, when a state creates a right to time credit for good conduct and recognizes that its revocation is an authorized sanction for misconduct, "a prisoner's interest therein is embraced within the Fourteenth Amendment 'liberty' concerns so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that this state-created right is not arbitrarily abrogated."   *Madison*, 104 F.3d at 768 (citing *Wolff*, 418 U.S. at 557).

Texas law provides that good-time credits apply only to eligibility for release on parole or mandatory supervision and do not affect the length of an inmate's sentence.   *See* TEX. GOV'T CODE ANN. § 498.003; *Ex parte Montgomery*, 894 S.W.2d 324, 328 (Tex. Crim. App. 1995).   The United States Supreme Court has recognized that the states have no duty to establish a parole system and that there is no constitutional right to be released on parole before the expiration of a valid sentence.   *See Board of Pardons v. Allen*, 482 U.S. 369, 378 n.10 (1987) (explaining that "statutes or regulations that provide

that a prole board 'may' release an inmate on parole do not give rise to a protected liberty interest"); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 11 (1979) (holding that a statute which "provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process").  In light of this authority, the Fifth Circuit has recognized that the Texas parole statutes create no constitutional right to release on parole because they encourage no expectancy of early release.  *Williams v. Briscoe*, 641 F.2d 274, 277 (5th Cir.), *cert. denied*, 454 U.S. 854 (1981) (Texas parole statute does not create a protactable expectancy of release, as recognized in *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979), but rather creates nothing more than a hope of parole); *Gilbertson v. Texas Board of Pardons and Paroles*, 993 F.2d 74, 75 (5th Cir. 1993) (same); *Creel v. Keene*, 928 F.2d 707, 712 (5th Cir.), *cert. denied*, 501 U.S. 1210 (1991) (same).  State prisoners in Texas "have no protected liberty interest in parole." *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997).  Therefore, any allegation by the petitioner that his disciplinary conviction has thwarted his release on parole does not establish a due process violation.

   Because Reeves cannot demonstrate a due process violation in connection with any delayed release on parole, he can only establish a basis for federal habeas corpus relief if the good-time credit sanction implicated a protected liberty interest in his early release on mandatory supervision.  In Texas, mandatory supervision is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T CODE §

508.001(5).  Noting that the mandatory supervision statute was recently revised to "avoid creating a protected liberty interest," the Fifth Circuit has avoided the question of whether the loss of accrued good-time credits under current Texas law implicates due process concerns.  *See Hudson v. Johnson*, 242 F.3d 534, 535-36 & n.1 (5th Cir. 2001) (citations omitted).  Assuming that Reeves may have had a liberty interest in good-time credit accrued toward early release on mandatory supervision, the revocation of those credits must comply with the minimum amount of procedural protection required under the circumstances.  *See Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985); *Henson v. United States Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000).

Prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so."  *Wolff*, 418 U.S. at 561.  Thus, prison disciplinary hearings are "not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Id.* at 556 (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)).  The minimum amount of due process required for prison inmates under these circumstances includes: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; and (3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action.  *See Wolff*, 418 U.S. at 563-67.

Reeves does not deny that he received advance notice of the charges against him. Likewise, Reeves does not dispute that he received a written statement of the fact finder, relating the evidence relied upon and the reasons for the decision.  Rather, as outlined previously, the claims made by Reeves primarily concern the sufficiency of the evidence, the availability of advance notice about the evidence presented at the hearing, and the opportunity to call a witness.  Reeves also complains about the adequacy of his counsel representative, his right to appeal, and the quantum of punishment, among other things. These allegations are addressed below, beginning with the petitioner's contention that the evidence was insufficient to support the conviction.

### 1.    Sufficiency of the Evidence

"[F]ederal courts cannot retry every prison disciplinary dispute; rather the court may act only where arbitrary or capricious action is shown."  *Reeves v. Pettcox* , 19 F.3d 1060, 1062 (5th Cir. 1994).  In other words, when reviewing a prison disciplinary decision, "the standard to be applied is whether or not actions of the disciplinary committee were arbitrary and capricious or an abuse of discretion."  *Smith v. Rabalais* , 659 F.2d 539, 543 (5th Cir. Unit A 1981), *cert. denied* , 455 U.S. 992 (1982); *see also Banuelos v. McFarland* , 41 F.3d 232, 234 (5th Cir. 1995); *Turner v. Johnson* , 46 F. Supp. 2d 655, 660 (S.D. Tex. 1999).  To satisfy the Due Process Clause in the context of prison disciplinary proceedings "requires only that there be some evidence to support the findings made in the disciplinary hearing." *Superintendent, Mass. Correctional Institution v. Hill* , 472 U.S. 445, 457 (1985).  "The goal of this standard —  variously a

'modicum of evidence,' 'any evidence,' or 'some evidence' — is to balance the need to prevent arbitrary deprivation of protected liberty interests with the need to acknowledge institutional interests and avoid administrative burdens." *Hudson v. Johnson*, 242 F.3d 534, 536 (5th Cir. 2001) (citing *Hill*, 472 U.S. at 455). Thus, federal habeas corpus courts "do not assess the weight of the evidence" when reviewing prison disciplinary proceedings, and need only examine whether the guilty finding has the "support of 'some facts' or 'any evidence at all.'" *Hudson*, 242 F.3d at 537.

According to the record, the disciplinary hearing officer based his guilty verdict on the charging officer's report and testimony. The respondent has submitted the hearing audiotape, the written disciplinary hearing report, the offense report, and records of the investigation. (Docket Entry No. 6, *Disciplinary Hearing Record and Audiotape*). A review of this record shows that the charging officer, Officer Crippen, conducted a shake down of the petitioner's dormitory cubicle after he received a tip. Officer Crippen found what appeared to be illegal drugs inside an eyeglass case in the pocket of a jacket that was hanging at the back wall of the petitioner's cubicle. Officer Crippen also found related paraphernalia, including a syringe, a lighter, and a "coke can" that had been cut in half and used to cook drugs. A photograph depicting the items seized from the petitioner's cubicle is included with the hearing record. A "NIK" (Narcotics Identification Kit) test of the drugs yielded a "positive" result for morphine or heroine. A second test yielded the same result, confirming that the substance seized from the petitioner's cubicle was an illegal drug. When asked about the amount, Crippen testified

that the substance weighed three grams exclusive of any wrapping or packaging.

At the hearing, Reeves insisted that the jacket searched by Officer Crippen did not belong to him.  Although it was the month of December and Reeves admitted it had been "freezing cold," Reeves insisted that he always kept his jacket at his place of work at the Ellis Unit farm shop and that he never wore his jacket to and from his dormitory.[1]  In support of his testimony that his jacket was always kept at his work place and not in his dormitory cubicle, Reeves presented a statement from one of his work supervisors, Mr. Whitehead.  Mr. Whitehead agreed that Reeves left his jacket in the Ellis Unit farm shop, and that he never saw Reeves wear a jacket to and from work.  Reeves argued at the hearing that, because he always left his jacket at the farm shop, the one found to contain drugs in his cubicle did not belong to him.

It was acknowledged at the hearing that Reeves lived in an open dormitory, meaning that other inmates had access to his cubicle.  When asked whether there was any evidence linking the drugs and drug paraphernalia to Reeves, Officer Crippen testified that the coke can recovered from the cubicle, which had been cut in half and used to cook the drugs, was marked on the underside with the number 33.  Reeves was assigned to cubicle 33, meaning that commissary items such a can of coke would have been so marked with the number 33.

The disciplinary hearing officer was clearly unpersuaded by Reeves' testimony.  The hearing officer noted that, after the drugs and paraphernalia were found in his cubicle,

---

[1]      According to his submission, the farm shop was located two miles from the dormitory where Reeves lived.  (Docket Entry No. 17, at 5).

Reeves failed a urinalysis test for drug use.  Exhibits presented by the petitioner confirm the positive drug test result.  (Docket Entry No. 2, *Exhibits*, Step 1 Grievance #2005075693, Step 2 Grievance #2005071182).  Reeves does not dispute that he had a positive drug test or that he was charged in a separate disciplinary case (#20050110907) for his drug usage stemming from this incident.

After considering all of the testimony, the disciplinary captain concluded that Reeves was guilty of possessing the drugs and drug paraphernalia that were recovered from his cubicle.  Reeves disagrees with this result.  However, the charging officer's testimony and written offense report is sufficient to constitute sufficient evidence in support of the prison official's finding in this case.  *See Hudson*, 242 F.3d at 537 (finding that the offense report, standing alone, meets the "some evidence" standard).  Reeves does not dispute that the drugs were found in a jacket taken from his cubicle.  His contention that the jacket did not belong to him was raised and rejected at the disciplinary hearing.  As noted above, a federal habeas corpus court may not weigh evidence when reviewing a prison disciplinary proceeding.  *See Hudson*, 242 F.3d at 537.  This record is not so devoid of evidence that the findings of the disciplinary captain were without support or were otherwise arbitrary.  *See Hill*, 472 U.S. at 457.  Because there was sufficient evidence to support the guilty finding, this Court must defer to the disciplinary hearing officer.

Reeves makes general allegations that Officer Crippen fabricated his testimony about finding the contraband.  Reeves further claims that the tape recorder was turned off

several times during the hearing to allow prison officials to concoct a story.  A review of the tape indicates that it was turned off only twice, once while waiting for Officer Crippen to show up and once more while the disciplinary captain deliberated the result. (Docket Entry No. 6, *Hearing Audio Tape* ).  Reeves did not include any of his allegations about fabricated testimony or purported improprieties with the hearing tape in the initial appeal that he filed shortly after his disciplinary conviction.  (Docket Entry No. 6, *Disciplinary Grievance Record* ).  Reeves offers no explanation for his failure to complain about these improprieties, which allegedly occurred in his presence at the hearing, in either the Step 1 or the Step 2 Grievance that he filed to appeal his conviction.

More importantly, Reeves provides no support for his allegations of impropriety.  His conclusory assertions are insufficient to raise a constitutional issue on collateral review. *See Koch v. Puckett* , 907 F.2d 524, 530 (5th Cir. 1990) ("Although *pro se* habeas petitions must be construed liberally, 'mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'"); *see also Ross v. Estelle* , 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").  Reeves does not establish that the evidence presented against him at the hearing was false or unreliable.   Under these circumstances, Reeves has not demonstrated that his disciplinary conviction run afoul of the Due Process Clause for lack of sufficient evidence.  Accordingly, he is not entitled to federal habeas corpus relief on this issue.

### 2.      Failure to Inform the Defendant of Evidence

Reeves alleges that he did not receive notice before the hearing of the "coke can" that was recovered from his cubicle and referenced by Officer Crippen at the hearing. According to the disciplinary hearing record, a photograph taken by Officer Crippen of the contraband was attached to the preliminary investigation report.  (Docket Entry No. 6, *Disciplinary Hearing Record*  , at 2, 4). The coke can referenced by Officer Crippen in his testimony is depicted in the photograph among the paraphernalia seized from the petitioner's cubicle.  Reeves' counsel substitute reviewed the preliminary investigation report and the photograph before the hearing.  (Docket Entry No. 6, *Service Investigation Work Sheet* , at 9) (referencing the "photo").  Reeves does not demonstrate that he was denied advance notice of any evidence prior to the hearing or that he was somehow prejudiced.  Reeves does not establish a constitutional violation or show that he is entitled  to federal habeas corpus relief on this ground.

### 3.      Refusal to Allow a Witness

Reeves argues that he was denied the opportunity to call Captain Massey as a witness.  The hearing in this case was held on December 22, 2004, and Captain Massey was reportedly unavailable to attend because he was on vacation through the Christmas holiday.  According to Reeves, Captain Massey was one of his supervisors at the farm shop and he would have testified that Reeves left a jacket at the farm shop.  Reeves insists that this would have proven conclusively that the jacket recovered from his

cubicle by Officer Crippen was not his.

The Fifth Circuit has emphasized that "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative." *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) (quoting *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir.1986); and citing *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir.1985); *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir.1984); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir.1983); and *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978)).  Beyond the proposed statement referenced above, Reeves does not suggest what other questions he would have asked Captain Massey had the witness been available to testify.  Likewise, Reeves does not present an affidavit from Captain Massey, outlining what his proposed testimony would have been.  Thus, Reeves' claim is entirely speculative.

As the respondent notes, the substance of Captain Massey's testimony about Reeves' jacket was presented at the hearing in the form of a statement from another supervisor, Mr. Whitehead, who reported that Reeves regularly left a jacket at his place of work. Reeves does not show that he was prevented from calling a witness or that he was deprived of the opportunity to present this testimony.  Accordingly, Reeves does not establish that he was denied the right to present a witness or that federal habeas corpus relief is warranted.

### 4.     Effective Assistance of Counsel

Reeves was represented by a counsel substitute, Ms. Ebner, at his disciplinary

hearing.  Reeves complains that he was denied his Sixth Amendment right to effective assistance of counsel at the disciplinary proceeding because she did not secure the presence of Captain Massey as a witness.  This claim is without merit.

Inmates have no constitutional right to retained or appointed counsel at prison disciplinary proceedings.  *See Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976).  It is well established that claims for ineffective assistance of counsel are dependent upon the right to counsel.  *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam) (holding that absent a constitutional right to counsel, there can be no deprivation of the right to effective assistance of counsel); *United States v. Palomo*, 80 F.3d 138, 141 n.5 (5th Cir. 1996) (citations omitted) (same).  Because Reeves had no right to counsel at his disciplinary proceeding, his ineffective-assistance claim fails as a matter of law.

Moreover, a review of the hearing tape shows that Ms. Ebner capably and articulately represented Reeves.  Ms. Ebner raised the issue about the fact that Reeves resided in an open dormitory, showing that other inmates had access to his cubicle and possessions. She also specifically questioned Officer Crippen about whether there was any evidence linking the jacket in which the contraband was found to Reeves.  Reeves has demonstrated no due process violation in connection with any failure to secure testimony from Captain Massey or any other shortcoming by his counsel.  Reeves fails to establish a constitutional violation and he is not entitled to federal habeas corpus relief on this ground.

### 5.     Right to Appeal

Reeves maintains further that he was denied his right to appeal.  Reeves claims that he was placed in "solitary confinement" during the entire fifteen-day period allotted to appeal the disciplinary conviction and that his counsel substitute did not visit him until the fifteenth day.  Reeves complains that, during this time, he had "'no' knowledge of how to properly begin" the appeal process.

The hearing record shows that the disciplinary captain informed Reeves of his right to appeal and explained the two-step grievance process that was available to challenge the conviction.  The record further shows that Reeves took advantage of this opportunity by filing a Step 1 Grievance within the time limit, followed by a Step 2 Grievance.  (Docket Entry No. 6, *Disciplinary Grievance Record* ).  Reeves also filed several additional grievances to challenge his disciplinary conviction, each of which was considered and rejected by prison officials.  (Docket Entry No. 2, *Exhibits* ).  Based on this record, Reeves fails to show that he was denied his right to appeal or that he is entitled to federal habeas corpus relief on this issue.

### 6.    Punishment

Referring to the revocation of 1,095 days of good-time credit and the attendant set off of his mandatory supervision release date, Reeves complains in his supporting memorandum that the punishment imposed was unduly harsh.  (Docket Entry No. 2, *Memorandum* , at 13).  The respondent notes that Reeves was charged with committing a code 12, level 1 disciplinary infraction.  According to the *TDCJ Disciplinary Rules and Procedures for Offenders* , serious infractions of this nature have no limit on the amount

of good-time that can be revoked.  As such, Reeves does not establish that the amount of good-time credits taken exceeded the amount established by the rules.

The standard of federal habeas corpus review of prison disciplinary decisions is constrained to whether some evidence supports the judgment.  *See Hudson*, 242 F.3d at 537. As noted earlier, this standard requires deference to findings made by the presiding prison official.  Because of the serious nature of the offense, which involved possession of a controlled substance and drug paraphernalia inside a prison facility, the punishment meted out by the disciplinary captain was not arbitrarily imposed or clearly excessive. Reeves fails to demonstrate a constitutional violation in connection with the quantum of his punishment. It follows that he is not entitled to federal habeas corpus relief on this issue.

### 7.    Retaliation

Reeves alleges in his memorandum that he has been retaliation against by the warden in some unspecified fashion because of a "free world case."  It appears from the pleadings that, after Reeves was convicted of the disciplinary infraction, his case was submitted to a special prosecutor assigned to the Walker County District Attorney's Office to consider whether criminal charges should be lodged based on illegal activities in the prison facility.  Reeves apparently believes that this was done in retaliation.

"To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."  *McDonald v.*

*Steward*, 132 F.3d 225, 231 (5th Cir. 1998).  A prisoner has no constitutional right to possess drugs or drug paraphernalia in violation of prison rules or state law.  Reeves presents no more than his own personal belief that charges were submitted to the district attorney's office in retaliation and not for some other legitimate reason.  For these reasons, Reeves fails to articulate a valid retaliation claim.  He further fails to show that his allegations concerning the submission of a "free world case," even if true, could entitle him to federal habeas corpus relief from the prison disciplinary conviction.  Because Reeves has failed to establish a valid claim, the respondent is entitled to summary judgment.

## V.  CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a

petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke* , 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel* , 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El* , 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack* , 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte* , without requiring further briefing or argument.  *See Alexander v. Johnson* , 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the Court concludes that jurists of reason would not debate whether the petitioner has stated a valid claim or whether any procedural ruling in this case was correct.  Accordingly, a certificate of appealability will not issue in this case.

## VI. <u>CONCLUSION</u>

Based on the foregoing, the Court **ORDERS** as follows:

1.     The respondent's motion for summary judgment (Docket Entry No. 13) is **GRANTED**.

2.      The petitioner's application for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED** with prejudice.

3.   A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED and ENTERED this 9th day of December, 2005.

Kenneth M. Hoyt
United States District Judge